UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY TORIN SERRANO,

    Petitioner,

v.                                                        Case No. 8:15-cv-945-T-36CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner Anthony Torin Serrano, a Florida prisoner, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and supporting memorandum (Dkt. 3), challenging his Hillsborough County convictions. In the response (Dkt. 12), Respondent agrees that the petition is timely. Serrano filed a reply. (Dkt. 16). Upon review, the petition will be DENIED.

## Procedural History

Serrano was convicted after a jury trial of one count of felon in possession of a firearm. (Dkt. 14, Ex. 1, Vol. I, p. 60). The state court sentenced him to 15 years in prison. (*Id.*, p. 75). The state appellate court *per curiam* affirmed the conviction and sentence. (Dkt. 14, Ex. 5). The state court denied Serrano's motion and amended motions for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. (Dkt. 14, Exs. 8, 9, 12, 13). The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 14, Ex. 17).

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *See*

*Penry v. Johnson*, 532 U.S. 782, 792 (2001). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.").

The state appellate court affirmed the denial of postconviction relief in a *per curiam* decision. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Serrano alleges ineffective assistance of trial counsel. His claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Serrano must demonstrate that his counsel performed deficiently in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Serrano must also show that he suffered prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because federal habeas review is "doubly" deferential to counsel's performance and the state court's decision. *Richter*, 562 U.S. at 105.

## Discussion

Ground One

The State alleged that Serrano sold three firearms to an undercover detective, Mark Gilbertson. Serrano argues that counsel was ineffective in failing to inform the jury that his brother, Devon Serrano ("Devon"), confessed to having sold the firearms to Detective Gilbertson. The state court denied this claim after an evidentiary hearing:

> In his initial and amended motions, Defendant alleges ineffective assistance of counsel due to trial counsel's failure to interview, investigate, and call witness Devon Serrano, the Defendant's brother, at trial. The Court previously denied Claim One of the Initial and Amended Motions finding "counsel contacted, investigated, interviewed Defendant's brother Devon Serrano and made a strategic decision to not call Devon to testify at trial, and thus Defendant's claim that counsel failed to contact, investigate, interview and call Devon to testify is conclusively refuted from the record" and that "counsel's decision to not call Devon to testify was reasonable trial strategy that the Defendant consented to."
>
> In his Second Amended Motion, Defendant added one paragraph to Claim One alleging the jury should have been advised that Devon Serrano gave a full confession, under oath, at a deposition before Defendant's counsel and the Assistant State Attorney. Defendant alleges counsel's failure to present the confession to the jury was ineffective.
>
> At the evidentiary hearing, Defendant's brother Devon Serrano (hereinafter "Devon") testified that he provided a statement to law enforcement in which he admitted to selling guns to "Mark" (referring to Detective Mark Gilbertson) around the time period Defendant was arrested and charged. Devon testified he does not recall where he gave the statement but that he remembers giving a statement that as far as he knew, his brother was not involved in the sale of any firearms. Devon testified that he does not remember any of the dates that he sold the guns but that selling guns was what he did at that time period. Devon testified he couldn't remember the dates because [there] were so many transactions of selling guns and that he was on drugs during the time period. Defendant submitted no other evidence of Devon's alleged confession.

> A review of the record reflects Devon possibly testifying at trial and admitting to committing the offenses Defendant was charged with was specifically discussed on the record by trial counsel, Defendant, the prosecutor, and the court. The record reflects trial counsel chose not to call Devon as a witness at trial citing strategic reasons and Defendant consented to this strategic decision.
>
> As stated in this Court's September 26, 2013 Order, the record demonstrates that "counsel contacted, investigated, interviewed Defendant's brother Devon Serrano and made a strategic decision to not call Devon to testify at trial." After considering Devon's evidentiary hearing testimony and the record, the Court is uncertain of the existence and substance of Devon's alleged confession. However, the Court finds given counsel's strategic decision to not call Devon as a defense witness which Defendant consented to, there was no legal venue for counsel to have admitted Devon's alleged confession at trial. The Court again denies Claim One for the same reasons as stated in the Court's September 26, 2013 Order.

(Dkt. 14, Ex. 13, pp. 318-20) (court's record citations omitted).

Serrano does not show that the state court unreasonably applied *Strickland* in finding that counsel made a reasonable strategic decision not to call Devon. Counsel's decision was a matter of trial strategy. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). *See also Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). A tactical decision amounts to ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

The reasonableness of counsel's decision is supported by the evidentiary hearing testimony discussed in the state court's order. In that testimony, Devon did not confess to the firearms sale that led to Serrano's conviction. Devon testified at the evidentiary hearing that he sold guns to Detective

Page 5 of 19

Gilbertson, but that he did not remember any dates that he did so. (Dkt. 14, Ex. 13, pp. 360, 362-63).[1] Accordingly, the vague and indefinite nature of Devon's evidentiary hearing testimony supports the reasonableness of counsel's tactical decision not to call him at trial. Furthermore, the record shows that Serrano did not contest the decision not to call Devon and recognized its strategic nature.[2] To the extent Serrano argues that counsel should have introduced the alleged confession despite the decision not to call Devon, deference is owed to the state court's determination that no other means were available to introduce Devon's alleged confession. The state court's determination rests on an application of Florida evidentiary law. Although Serrano's ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . [a federal court] must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Accordingly, Serrano fails to show that the trial court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Serrano also raises a federal due process claim, alleging that "the jury's failure to consider Devon Serrano's confession" amounted to fundamental error. (Dkt. 3, p. 5). Serrano was required

---

[1] Detective Gilbertson testified at trial that Devon sold him a firearm the day after Serrano sold him firearms. (Dkt. 14, Ex. 1, Vol. III, p. 321).

[2] The trial court asked Serrano about the decision not to call Devon:

THE COURT: Also, Mr. Serrano, you understand that your brother's not going to be taking the stand?

MR. SERRANO: Another strategical decision, yes, ma'am.

THE COURT: And are you in agreement with that decision?

MR. SERRANO: I mean, they - - they've pointed out what the advantages are and they sound good to me. They're the professionals on that.

(Dkt. 14, Ex. 1, Vol. III, p.319).

to exhaust this claim by presenting it in state court. *See* 28 U.S.C. § 2245(b)(1)(A). In his reply, he appears to acknowledge that he failed to satisfy the exhaustion requirement because he did not bring the claim on direct appeal or in his postconviction motions. (Dkt. 14, Exs. 3, 8, 9). As Serrano cannot return to state court to file an untimely appeal or postconviction motion, *see* Fla. R. App. P. 9.140(b)(3), Fla. R. Crim. P. 3.850(b), the claim is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Serrano argues that he overcomes the default through the cause and prejudice exception. In support, he cites *Martinez v. Ryan*, 566 U.S. 1 (2012). But *Martinez* only concerns defaulted claims of ineffective assistance of trial counsel. *See id.* at 16 (stating that *Martinez*'s holding "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise *a claim of ineffective assistance at trial* . . ." (emphasis added)). Accordingly, *Martinez* does not apply to Serrano's defaulted due process claim. Serrano also alleges that he is actually innocent. To the extent he intends to argue that the fundamental miscarriage of justice exception applies, however, his argument must fail. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show his actual innocence, Serrano must present "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* at 324. Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). But Serrano has not identified any new reliable evidence showing that he is factually innocent of the crime of felon in possession of a firearm. Therefore, Serrano has not overcome the

procedural default of his substantive due process claim. Serrano is not entitled to relief on Ground One.

Ground Two

Serrano contends that trial counsel was ineffective in failing to investigate Detective Kara Vance's role in the undercover operation. Detective Vance testified that she was part of Detective Gilbertson's backup. (Dkt. 14, Ex. 1, Vol. III, p. 229). During the operation, backup lost contact with Detective Gilbertson. (*Id.*, p. 230). Detective Vance testified that she drove by in an unmarked car to verify Detective Gilbertson's location and ensure his safety. (*Id.*). She testified that she saw Detective Gilbertson and Serrano standing near a car in a driveway. (*Id.*, pp. 232-33).

Serrano claims that Detective Vance has arrested him in the past and is biased against him. Serrano alleges that he had "a valid concern that Detective Kara Vance was a 'trumped up' witness" because of her alleged bias and because she was not disclosed as a witness until 14 months after the offense. (Dkt. 1, p. 7). He alleges that an investigation by counsel into the "paper trail" regarding her duties on the day of the offense may have revealed that she had no involvement in the matter. (*Id.*). Additionally, Detective Vance testified that she could identify Serrano because she had previously spent 10 hours with him on five different occasions. (Dkt. 14, Ex. 1, Vol. II, pp. 233-34). But Serrano claims that a proper investigation would have shown that her testimony about the amount of time they had spent together was false. The state court denied this claim:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to properly investigate Detective Vance. Defendant alleges counsel should have investigated Vance because Detective Gilbertson testified under oath he was the only law enforcement officer present at the time of the offense, and Defendant maintained it was a case of mistaken identity. Defendant alleges his counsel should have at a minimum investigated Vance's work schedule on the day of the offense. Defendant alleges he was prejudiced because had counsel investigated Vance and discovered she was not working on the day of the offense or not assigned as a back-up, counsel could have impeached her testimony and there is a reasonable probability the jury would

have found Defendant not guilty.

At the evidentiary hearing Defendant's prior counsel Richard Strickland (hereinafter "trial counsel") testified that he sat second chair during Defendant's trial, [and] that Charity Braddock was first chair. Trial counsel explained he reviewed the Public Defender's Office file on Defendant's case prior to testifying at the hearing. Trial counsel explained he was responsible for cross examining Detective Vance during trial. Trial counsel explained Braddock briefed him on the case and he reviewed police reports and motions in limine prior to serving as second chair. Trial counsel explained Braddock took Vance's deposition, but that the deposition was not transcribed. Trial counsel explained prior to questioning Vance he reviewed both Braddock's handwritten notes from the deposition and a typewritten list of questions she prepared to ask Detective Vance at trial.

Trial counsel testified he was not involved in the investigations prior to trial including into Vance. Trial counsel testified in his review of the Public Defenders Office's file of Defendant's case that he did not find any investigative requests or notes from Braddock requesting records such as time sheets and work schedules from Vance. Trial counsel explained the file did reflect information of the prior contacts between Defendant and Vance. Trial counsel testified that in Vance's deposition, Braddock asked her if she was working the day of the offense and the nature [of] her participation in the case. Specifically, trial counsel testified that Braddock's notes reflect she asked Vance "What time did you check into the office, did you respond to any calls that day" and that Vance responded, as she did at trial, that

> "she was to be part of the cover or back up for Detective Gilbertson and that he gave a briefing, in which five to seven other deputies from the Hillsborough County Sheriff's Office attended, to get the facts on how this thing was going to go down so that they could provide cover for the transaction."

Trial counsel clarified that the deposition notes reflect Vance served as back up and was not present during the hand to hand transaction between Defendant and Detective Gilbertson.

When asked if the fact that Vance was not listed as a witness until almost a year after arraignment would have assisted him in cross examining Vance, trial counsel testified "not necessarily" because Detective Vance served only as a backup role which was not unusual in undercover operations. On cross examination, trial counsel further explained that in his experience as a defense attorney when dealing with undercover operations it is not unusual for other law enforcement officers to be involved and not listed as witnesses or not even known by the undercover officer. Trial counsel explained he has personally never felt the need to verify whether an officer was working through a work log, explaining he doesn't see "any reason to question it" when the officer is testifying to facts consistent with what occurred.

The Court finds Richard Strickland's testimony to be credible. The Court notes counsel is only required to conduct a reasonable investigation. *See Freeman v. State,* 858 So. 2d 319, 325 (Fla. 2003). Trial counsel's testimony at the evidentiary hearing established that first chair counsel deposed Detective Vance prior to trial and specifically questioned her about whether she worked the day of the offense and her involvement in the case. The Court finds Defendant cannot demonstrate counsel was defective given counsel's reasonable investigation of Detective Vance by deposing her prior to trial, questioning her about her involvement in the case, and Detective Vance's consistent deposition and trial testimony that she was working and served as back up to Detective Gilbertson in the undercover operation.

The Court further finds Defendant cannot demonstrate he was prejudiced sufficient to undermine confidence in the outcome given Detective Gilbertson's identification of the Defendant, Gilbertson's testimony concerning the transaction on June 5, 2008, the audio recording of the transaction played at trial, and the stipulations admitted at trial. Specifically, Gilbertson testified he conducted an undercover investigation leading him to meet with Defendant at Defendant's residence on June 5, 2008. Gilbertson testified he met with Defendant in the backyard, Defendant went into a shed in the backyard, retrieved firearms, showed Gilbertson the firearms, Gilbertson purchased the firearms, Defendant carried the firearms to Gilbertson's car, and Defendant loaded the firearms into Gilbertson's car. Gilbertson described the firearms and identified the firearms from photographs which were admitted at trial. Gilbertson testified he saw the firearms from the photos in Defendant's hands on June 5, 2008. Gilbertson identified Defendant in court as the person possessing and selling the firearms on June 5, 2008. Gilbertson testified audio of the transaction between himself and Defendant was recorded with a digital recording device, that the recording device was functioning correctly on June 5, 2008, that the recording is a fair and accurate depiction of the events on June 5, 2008, and identified the voices on audio recording. The audio recording was admitted at trial and played in court. Two stipulations were read at trial, the first stipulated that Defendant is a convicted felon and the second stipulated that the firearms seized in the case were operable, functioning, firearms on the date of the offense.

After reviewing Defendant's Motions, the State's Response, testimony and evidence presented at the evidentiary hearing, the parties written arguments, the court file, and the record, the Court finds Defendant cannot demonstrate he was prejudiced sufficient to establish the outcome of the trial would have been different had counsel investigated Detective Vance's work schedule prior to trial and possibly impeached her at trial, given the overwhelming evidence in this case against the Defendant to establish the charge [of] felon in possession of a firearm. For the foregoing reasons, the Court finds no relief is warranted on claim three.

(Dkt. 14, Ex. 13, pp. 320-23) (court's record citation omitted).

The court's determination that Strickland's testimony was credible is a factual finding that is

presumed correct. Serrano has not rebutted the presumption of correctness by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1))). *See also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination"); *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over the petitioner's."); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").

The testimony that the court found credible reflects that counsel did inquire about Detective Vance's assignment on the day of the offense. (Dkt. 14, Ex. 13, pp. 340, 345). Additionally, in the absence of any evidence that Detective Vance was not in fact assigned to work in a backup role in this matter, Serrano cannot show that additional investigation would have revealed any information relevant to Detective Vance's credibility. Strickland's testimony supports the conclusion that counsel made a reasonable investigation into Detective Vance's work history and made a reasonable decision not to extend the investigation. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Additionally, as the state court found, Serrano fails to show prejudice as a result of counsel's

performance. To establish the offense of felon in possession of a firearm, the State had to prove beyond a reasonable doubt that 1) Serrano had been convicted of a felony, and 2) after the conviction, Serrano knowingly had in his care, custody, possession, or control a firearm. (Dkt. 14, Ex. 1, Vol. III, p. 347). In light of the evidence of guilt, as set out in the state court's order, Serrano fails to show a reasonable probability that the outcome of trial would have been different even assuming counsel had been able to contradict Vance's testimony about her work schedule or about the amount of time she previously spent with Serrano. Serrano has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Two.[3]

Ground Three

Serrano alleges that trial counsel was ineffective with respect to Detectives Gilbertson and Vance. First, Serrano alleges that counsel should have brought out his history with Detective Vance to attack her credibility with her alleged bias and show that she "had a motive to prevaricate." (Dkt. 3, p. 13). Second, Serrano claims that counsel should have addressed an alleged inconsistency in the detectives' testimony. Specifically, Detective Gilbertson testified that when Detective Vance drove by, he was at the threshold of the gate separating the house's front and back yards and was returning to the front yard. (Dkt. 14, Ex. 1, Vol. III, pp. 222-23, 226). His earlier testimony indicated that when he returned to the front yard, Serrano went back inside the house before coming out the front door. (*Id.*, p. 207). But Detective Vance testified that when she drove by, she observed Detective Gilbertson and Serrano standing in the driveway near a car. (*Id.*, pp. 232-33, 257). Third, Serrano

---

[3] In his memorandum, Petitioner alleges a due process violation as a result of the state postconviction court's decision to allow Strickland to testify to lead counsel Braddock's work on his case. A claim based on an alleged error in state postconviction proceedings is not cognizable on federal habeas review because it does not concern the validity of the conviction. *See Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief.").

claims that trial counsel failed to impeach Detective Gilbertson at trial with his inconsistent deposition testimony. As addressed, Detective Gilbertson testified at trial that the backup team lost contact with him, and that he observed Detective Vance drive by the location of the transaction. (*Id.*, pp. 222-23). But Serrano claims that, during his deposition, Detective Gilbertson testified that he was the only officer present, and never mentioned a backup team or the loss of contact.

The state court summarily denied Serrano's claims of ineffective assistance:

> In claim two, Defendant alleges ineffective assistance of counsel due to trial counsel's failure to impeach the State's main witnesses, Detectives Mark Gilbertson and Kara Vance, with their inconsistent statements and show[] their motive and bias against Defendant. Defendant alleges at his deposition Gilbertson testified he was the only law enforcement officer present at the transaction with Defendant and that he did not have a back-up team with or following him. Defendant alleges later Detective Vance was added to the State witness list and Gilbertson testified at trial Vance was also present at the time of the offense. Defendant alleges at trial Gilbertson testified he did have a backup team, Vance was a part of the back-up team, he lost contact with the back-up team during the transaction, and that he saw Vance drive past the scene as he walked from the side of the residence to the front yard. Defendant alleges Gilbertson's earlier trial testimony was that Defendant was inside the residence as Gilbertson walked from the side of the residence to the front yard, and thus Defendant alleges when Vance drove by the residence she could not have seen Defendant because based on Gilbertson's testimony Defendant was inside the residence. Defendant alleges Vance's trial testimony was that as she drove past the residence she saw Defendant at the front of Gilbertson's vehicle. Defendant alleges Vance and Gilbertson's testimony are inconsistent and counsel should have effectively cross examined and impeached both witnesses. Defendant alleges because of prior encounters with Defendant Vance had motive and bias to offer prejudicial testimony against Defendant. Defendant alleges had counsel done a thorough cross examination and impeachment of Gilbertson and Vance, bringing out their inconsistencies and bias, there is a reasonable probability the jury would have returned a not guilty verdict.
>
> The State in its Response argues first that counsel did cross examine Detectives Gilbertson and Vance as to the inconsistencies in their trial testimony and further argued the inconsistencies in her closing argument; and thus Defendant's claim as to lack of cross examination is conclusively refuted from the record and should be denied. As to Defendant's claim that counsel did not show Detective Vance's motive and bias against the Defendant based on Vance's prior encounters with the Defendant, the State argues counsel filed and argued a motion in limine specifically related to Vance's prior encounters with the Defendant, to prevent Defendant's prior record from being discussed at trial. The State argues the Court inquired of the Defendant directly

regarding the prior encounters between Defendant and Detective Vance, in which Defendant specifically informed the Court he disagreed with his counsel's trial strategy. Counsel informed the Court that they were keeping the Defendant's best interest in mind to keep out any mention of prior encounters with Detective Vance. The State argues the record is clear that counsel made a strategic decision to keep references to prior encounters between Detective Vance and Defendant out of trial and thus, counsel could not get into motive or bias.

The Court finds the State's Response persuasive. A review of the trial transcript reflects that Detective Gilbertson testified he was "at the threshold of the gate, walking back to the front yard" when he saw Detective Vance drive by the house, while Vance testified that she observed Gilbertson "in the driveway" when she drove by the house. Counsel specifically questioned Vance as to this inconsistency in Gilbertson's and Vance's testimony, asking if she was sure and that the people "weren't back by the gate leading out of- away from the fence," as Gilbertson had testified. Vance responded, "No, they were in the front," contrary to Gilbertson's testimony. Further, counsel argued this inconsistency in Gilbertson and Vance's testimony concerning where Defendant and Gilbertson were located when Vance drove by the house in closing argument. As such, the Court finds Defendant's claim that counsel should have cross examined Vance and Gilbertson concerning their inconsistent testimony is refuted for the record.

As to the prior encounters between Detective Vance and Defendant as Vance's motive and bias for testifying, the record reflects counsel filed and argued a motion in limine specifically seeking to limine out "any mention of Defendant's prior contact with Detective Vance." Counsel explained to the Court that she sought to limine out Defendant's prior encounters with Vance so that Defendant's prior record would not be brought up; the Court denied the motion. Defendant expressed to the court that he disagreed with his counsel's strategy regarding questioning Vance, in that he believed his previous encounters with Vance should be discussed to show the jury Vance's motive and bias in her testimony. The Court inquired of the Defendant if he understood why his counsel sought to keep out testimony concerning the prior encounters with Vance and the Defendant stated he understood but disagreed. The Court asked if Defendant wanted counsel to "open the door and speak about all these...negative encounters" and whether Defendant understood that if his counsel opened the door it would allow the State on redirect to inquire further into the encounters. Defendant stated he understood but still wanted the encounters to be discussed for the jury to consider. The Court inquired of counsel as to Defendant's opinion on this strategy and counsel informed the court "we're trying to keep his best interests at the – at the forefront here, despite what he wants." Thus, the Court finds the record demonstrates that counsel made a strategic decision to not question Detective Vance on her prior encounters with Defendant so as to avoid prejudice to the Defendant that would result from Defendant's prior record being discussed at trial. *See Occhicone v. State,* 768 So. 2d 1037, 1048 (Fla. 2000) ("[S]trategic decision do not constitute ineffective assistance of counsel if alternative courses have been

considered and rejected and counsel's decision was reasonable under the norms of professional conduct."); *see also Jackson v. State,* 975 So. 2d 485 (Fla. 2d DCA 2007)(noting "an evidentiary hearing is not required when it is obvious from the record that a counsel's decision was strategic.").

After reviewing the Motion, the State's Response, and the court file, the Court finds counsel cross examine[d] Detective Vance and Gilbertson concerning their inconsistent testimony and thus Defendant's claim that counsel failed to cross examine the detective is refuted from the record. The Court further finds the record establishes counsel made a strategic decision to not cross examine Detective Vance on her prior encounters with the Defendant. The Court finds counsel's strategic decision to not question Detective Vance concerning her prior encounters with the Defendant, and thus prevent prejudice to the Defendant from his prior record being discussed at trial to be a reasonable trial strategy. *See Occhicone*, 768 So. 2d at 1048; *Jackson,* 975 So. 2d at 485. For the foregoing reasons, the Court finds no relief is warranted on claim two.

(Dkt. 14, Ex. 12, pp. 111-15) (court's record citations omitted).

First, Serrano fails to show that counsel's strategic choice to keep the details of his prior history with Detective Vance from the jury was "patently unreasonable." *See Dingle*, 480 F.3d at 1099. As the state court noted, such a decision would have been made to avoid prejudicing Serrano. Second, as the state court found, counsel addressed the inconsistency in the detectives' testimony about Detective Gilbertson's location. Counsel cross-examined the detectives about the location and, during closing arguments, addressed the inconsistency in their testimony. (Dkt. 14, Ex. 1, Vol. III, pp. 226-27, 257-58, 342). Accordingly, the record supports the state court's conclusion that counsel did not perform deficiently.

Third, Serrano has not shown that the state court unreasonably denied his claim that counsel was ineffective in failing to cross-examine Detective Gilbertson with his allegedly inconsistent deposition testimony. The state court identified the facts supporting this claim, but did not specifically analyze the claim. The state court is presumed to have denied the claim on its merits, however. *See Richter*, 562 U.S. at 99. Serrano does not show that the denial involved an unreasonable application

of *Strickland* or an unreasonable determination of fact.[4] Serrano has not demonstrated prejudice resulting from counsel's performance. In light of the State's evidence of guilt, Serrano has not demonstrated a reasonable probability that the outcome of trial would have been different had the jury learned of the alleged inconsistencies between Detective Gilbertson's deposition and trial testimonies. Accordingly, Serrano is not entitled to relief on Ground Three.

Ground Four

Serrano claims that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972), by knowingly presenting Detective Vance's perjured testimony. He claims that "[Detective] Vance's role in this case was fabricated to circumvent the petitioner's potential to file a law suit for unlawful arrest. The State prosecutor had knowledge of this subterfuge and failed to correct it." (Dkt. 3, p. 15). The state appellate court denied this claim without discussion on direct appeal.

> To make out a valid *Giglio* claim, a petitioner "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material-i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."

*Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)). Serrano's claim must fail because he has not alleged any facts to show that Detective Vance's testimony was false. Rather, his claim is based on speculation arising out of his belief that Detective Vance has a personal "vendetta" against him. (Dkt. 1, p. 11). Further, even if her testimony was false, Serrano alleges no facts showing that the prosecutor knew the testimony to be false. Accordingly, Serrano cannot establish that the prosecutor violated *Giglio*

---

[4] Even if *de novo* review is appropriate, *see Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003), Serrano's claim fails for the same reasons addressed.

by knowingly presenting false testimony. Serrano does not show that the state appellate court's rejection of his claim involved an unreasonable application of *Giglio*, or was based on an unreasonable determination of fact. He is not entitled to relief on Ground Four.

Ground Five

Serrano contends that the trial court erred in failing to conduct an adequate hearing under *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973). *Nelson* establishes guidelines for a state trial court to address a criminal defendant's claim that his trial counsel should be discharged due to incompetence. Because federal habeas relief is only available when a prisoner is in custody in violation of the Constitution, laws, or treaties of the United States, state law questions are not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). *See also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Accordingly, Serrano's argument that the state trial court erred in not complying with *Nelson* is a non-cognizable state law matter. That Serrano frames his argument to allege a federal due process violation does not affect the claim's cognizability. *See Branan*, 861 F.2d at 1508 ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976))). Serrano cannot obtain relief on Ground Five.

Ground Six

Serrano alleges that he is entitled to relief due to the cumulative effect of counsel's errors. The state court denied this claim on the basis that all of Serrano's ineffective assistance claims lacked merit. (Dkt. 14, Ex. 13, p. 324). Because Serrano has failed to establish any specific instances of

ineffective assistance, he cannot show entitlement to relief on his cumulative error claim. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). The state court's rejection of Serrano's cumulative error claim was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of fact. Serrano is not entitled to relief on Ground Six.

Any of Petitioner's claims not specifically addressed in this Order have been determined to be without merit.

Accordingly, it is ordered that:

1. Serrano's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Serrano and to close this case.

3. Serrano is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Serrano "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Serrano has not made this showing. Because Serrano is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on July 30, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Anthony Torin Serrano
Counsel of Record